DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of robbery in violation of R.C. 2911.02(A)(2). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
 "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION FOR ACQUITTAL.
 "II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The facts that are relevant to the issues raised on appeal are as follows. On February 11, 1998, appellant was indicted on one count of robbery in violation of R.C.2911.02(A)(2). Appellant entered a plea of not guilty and on May 20 and 21, 1999, the case was tried to a jury. The following relevant testimony was heard.
Andrea Diaz testified that on November 22, 1997, at approximately 6:30 p.m., her purse was taken from her as she and her husband, Joas, walked from their car to the Best Buy store at Airport Highway and Reynolds Road in Toledo. Diaz testified that as she and her husband walked through the parking lot she noticed a car pulling up very close to her. She stated that the person driving the car reached out and grabbed her purse and began to drive away. Diaz' purse caught on her coat sleeve and she was dragged approximately fifteen feet along the ground before she could free herself. Diaz identified the car as a white Camaro. Diaz further testified that she and her husband got in their car and followed the Camaro out of the parking lot. Diaz was able to write down the license plate number of the Camaro before it got away from them. Diaz and her husband then pulled off the road and called the police. Diaz stated that she did not get a good look at the person who grabbed her purse but did see that there were two people in the front seat and one in the back. Diaz testified that as a result of being dragged by the car her knees and right elbow were scraped, her right arm and hip were bruised, and a tendon in her arm was torn. Diaz was not able to state whether appellant was the person who took her purse. She further testified that her purse, which was not recovered, contained her checkbook, several credit cards and $105 in cash.
The testimony of Joas Diaz confirmed that of his wife. Joas was unable to get a good look at the driver, but saw three males in a white Camaro and said it was the driver who grabbed the purse. Joas testified that while they were following the Camaro a van pulled up beside the Camaro. Joas saw a man get out of the van, approach the Camaro and speak to the driver, but he was unable to hear the conversation.
Toledo Police Officer Leah Lewis testified that on November 22, 1997, she was flagged down by the Diazes, who reported the robbery and the license plate number. The police traced the Camaro to the registered owner's address and the following day Officer Lewis went to that address and located the car. She testified that she looked inside the car and saw two address labels with the victim's name in the back seat. Lewis then turned the information she had gathered over to a detective. Abner Landry testified that on the evening of November 22, 1997, he was riding with two friends in a white Camaro he owned. Landry stated that one of the friends with him was appellant and the other was Eric Baucom. Appellant was driving and Landry was in the front passenger seat. He further testified that while they were in the parking lot at the corner of Airport Highway and Reynolds Roads in Toledo, appellant snatched a woman's purse. Landry stated that the three men then went to the mall and purchased several items with the victim's credit cards.
The state called Detective John Wirth, Toledo Police Department, who testified as to his investigation of the robbery. Wirth stated that he interviewed Abner Landry on November 28, 1997, and that Landry told him appellant was the one who stole the purse. Wirth stated that he was able to identify and locate David Veler, the driver of the van that Joas Diaz had seen pull up next to the Camaro, by tracing a call Veler made to 9-1-1 on his cell phone. Wirth contacted Veler and interviewed him. Wirth then assembled a photo array which included a photograph of appellant and showed it to Veler. Based upon Veler's statement after viewing the photo array, a warrant was issued for appellant's arrest.
The state's final witness was David Veler. Veler recalled that he was in the Best Buy parking lot on the evening of November 22, 1997 when he heard someone scream. Veler then saw a woman get hit by a white Camaro. He testified further that when he saw the Camaro take off he got in his car and followed, hoping to get the license plate number. When the Camaro stopped at a light, Veler got out of his car, walked up to the driver, and told the man that he thought he had hit someone in the parking lot. The driver responded that he had not hit anyone, and drove away. Veler testified that appellant looked like the man who had been driving the Camaro, although he thought that at the time of the robbery the man driving the car had hair a little bit longer. Veler recalled having identified the driver of the car from the photo array Detective Wirth showed him shortly after the robbery.
At the conclusion of the state's testimony, the defense moved for acquittal pursuant to Crim.R. 29. The trial court overruled the motion.
The defense presented the testimony of Eric Baucom, who denied having been in the car with appellant and Abner Landry on November 22, 1997. Upon cross-examination, Baucom stated that he did not recall where he was on November 22, 1997. Jim Johnson, a friend of appellants, testified that he has always known appellant to be a decent, law-abiding person. Tyrone Sturdivant, appellant's father, testified that appellant has worn his hair short for quite a few years.
At the close of all of the evidence, the defense renewed its motion for acquittal. The trial court denied the motion. On May 21, 1999, the jury returned a verdict of guilty of robbery and on May 27, 1999, the trial court imposed sentence. It is from that judgment that appellant appeals.
In his first assignment of error, appellant asserts that the trial court erred by denying his motions for acquittal because the evidence identifying appellant as the robber was insufficient to sustain a conviction as a matter of law. Appellant argues that the evidence was slight and of little probative value, citing the fact that neither the victim nor her husband could identify the assailant, as well as Eric Baucom's testimony that he was not in Landry's car on the night of the robbery.
As to appellant's motions for acquittal made pursuant to Crim.R. 29(A), it is well-established that "a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved." Statev. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Bridgeman
(1978), 55 Ohio St.2d 261. The reviewing court shall consider the evidence in a light most favorable to the appellee. Jackson v.Virginia (1979), 443 U.S. 307.
R.C. 2911.02(A)(2) provides:
 "(A)No person, in attempting or committing a theft offense or in fleeing immediately after the attempt oroffense, shall do any of the following:
"* * *
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; * * *"
Upon consideration of all the evidence that was before the trial court, this court finds that there was evidence upon which reasonable minds could reach different conclusions as to whether each material element of the offense of robbery had been proven beyond a reasonable doubt. Accordingly, this court finds that the trial court did not err by denying appellant's motions for acquittal and appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the jury's verdict was against the manifest weight of the evidence. Appellant argues that the only evidence linking him to the robbery was the testimony of Abner Landry and that Landry's testimony was self-serving.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. When considering whether a verdict is against the weight of the evidence, "the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."Thompkins at 387, citing Tibbs v. Florida (1982), 457 U.S. 31,42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.Id.
As previously discussed, Abner Landry testified that appellant was driving his car at the time of the robbery and that appellant grabbed the victim's purse. Further, David Veler identified appellant as the man driving the white Camaro at the time of the robbery. This testimony was undisputed. We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of robbery. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
Melvin L. Resnick, J., Richard W. Knepper, P.J.,Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ KNEPPER, P.J.